**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY – TRENTON VICINAGE**

| | |
|---|---|
| ADVANCED TECHNOLOGIES AND INSTALLATION CORPORATION d/b/a TELECOM NETWORK SPECIALISTS,<br><br>          Plaintiff,<br><br>    v.<br><br>NOKIA SIEMENS NETWORKS US LLC,<br><br>          Defendant. | Civil Action No. 3:09-CV-06233 (FLW) (TJB)<br><br>The Honorable Freda L. Wolfson, U.S.D.J.<br><br>The Honorable Tonianne J. Bongiovanni, U.S.M.J. |

---

**DEFENDANT NOKIA SIEMENS NETWORKS US LLC'S BRIEF IN SUPPORT OF MOTION FOR TRANSFER TO THE NORTHERN DISTRICT OF TEXAS**

---

                      **REED SMITH LLP**
                      *Formed in the State of Delaware*
                      Princeton Forrestal Village
                      136 Main Street, Suite 250
                      Princeton, New Jersey 08540
                      Tel: (609) 987-0050
                      Fax: (609) 951-0824

                      Attorneys for Defendant,
                      Nokia Siemens Networks US LLC

*On the brief*:
    *Mark S. Melodia, Esq.*

# Table of Contents

**Page**

I. INTRODUCTION ................................................................................. 1

II. STATEMENT OF FACTS ................................................................. 2

III. ARGUMENT .................................................................................... 6

    A.    The Northern District of Texas Is a More Convenient Forum............. 6

        1.    Plaintiff's Choice of a Foreign Forum Holds Little
Weight. ...................................................................................... 7

        2.    Plaintiff Failed to Adhere to a Valid Forum Selection
Clause ........................................................................................ 9

        3.    Defendant NSN Prefers Texas as a Venue. ........................... 12

        4.    The Claims Did Not Arise in New Jersey............................... 12

        5.    Convenience of the Parties Weighs in Favor of Transfer........ 13

        6.    The Northern District of Texas Provides Greater
Convenience for Potential Witnesses....................................... 13

        7.    Transfer to Texas Enhances the Ease of Access to
Witnesses and Documentary Evidence..................................... 14

        8.    Texas Has a Local Interest in This Lawsuit............................. 15

        9.    New Jersey Law Will Not Govern the Case. ........................... 16

        10.    This Court Has More Pending Cases Than the Northern
District of Texas........................................................................ 18

        11.    The Burden of Jury Duty Should Not Be Imposed on
New Jersey Citizens. ................................................................ 18

IV. CONCLUSION................................................................................. 19

# Table of Authorities

## Cases

Dwyer v. General Motors Corp

    853 F. Supp. 690 (S.D.N.Y. 1994) ...................................................................... 17

Foster v. Chesapeake Ins. Co.,

    933 F.2d 1207 (3d Cir.), *cert. denied*, 502 U.S. 908, 116 L. Ed. 2d 245,

    112 S. Ct. 302 (1991) ...................................................................................... 11

Hardaway Constr., Inc. v. Conesco,

    583 F.Supp. 617 (D.N.J. 1983) ...................................................................... 18

Hoffer v. InfoSpace.com, Inc.,

    102 F. Supp. 2d 556 (D.N.J. 2000) ............................................................ 7, 16

In re Consol. Parlodel Lit.,

    22 F. Supp. 2d 320 (D.N.J. 1998) ............................................................... 7, 8

Jumara v. State Farm Ins. Co.,

    55 F.3d 873 (3d Cir. 1995) .............................................................................. 7

Liggett Group, Inc. v. R.J. Reynolds Tobacco Co.,

    102 F. Supp. 2d 518 (D.N.J. 2000) ..................................................... passim

Nat'l Property Investors VIII v. Shell Oil Co.,

    917 F. Supp. 324 (D.N.J. 1995) ................................................................ 14, 18

Park Inn Int'l, L.L.C. v. Mody Enters.,

    105 F. Supp. 2d 370 (D.N.J. 2000) ........................................................... 10, 11

Solomon v. Continental Am. Life Ins. Co.,

    472 F. 2d 1043 (3d. Cir. 1973) ...................................................................... 18

The M/S Bremen v. Zapata Off-Shore Co.,

    407 U.S. 1, 32 L. Ed. 2d 513, 92 S. Ct. 1907 (1972) ...................................... 10

Van Cauwenberghe v. Biard,

    486 U.S. 517 (1988)................................................................. 15

## Statutes

28 U.S.C. § 1391(a)................................................................. 7

28 U.S.C. § 1404(a)......................................................... passim

29 U.S.C. § 1391(c)................................................................. 7

## I. INTRODUCTION

Defendant Nokia Siemens Networks US LLC submits this brief in support of its motion to transfer this action to the United States District Court for the Northern District of Texas under 28 *U.S.C.* § 1404(a). This action arises from a contractual dispute in which Plaintiff Advanced Technologies and Installation Corporation d/b/a Telecom Network Specialists ("TNS") alleges that NSN has failed to pay certain sums that TNS mistakenly believes it is owed for services allegedly rendered.

All of Plaintiff's claims relate to the alleged breach of a contract that was not negotiated, executed, or performed in the state of New Jersey. This action has no significant, relevant connection to New Jersey or to the District of New Jersey. Plaintiff is incorporated in Washington with its headquarters in Richardson, Texas and has no office or permanent operations in the state of New Jersey. Most if not all of the employees of the Plaintiff, as well as many of the employees of the Defendant, who were responsible for performance and administration of the contract at issue, and are therefore likely to be key witnesses in this action, reside in Texas. Furthermore, the contract at issue contains a valid forum selection clause granting Defendant the exclusive right to determine the proper forum for bringing any legal action arising from the contract. This clause was breached when Plaintiff

filed suit in New Jersey. The contract at issue also contains a choice of law provision which states that such contract is to be governed by Texas law.

All aspects of this dispute clearly indicate that transfer to the Northern District of Texas, pursuant to 28 *U.S.C.* §1404(a), will promote not only the convenience of the parties and witnesses, but will also serve the interests of justice.

## II. STATEMENT OF FACTS

On or about May 21, 2007, TNS and NSN entered into a Master Services Agreement (the "MSA") whereby TNS agreed to provide NSN with certain services required by NSN in order to supply its customer, T-Mobile, with telecommunications infrastructure. *See Comp.* ¶¶ 3, 5. The MSA was executed by Joe Kaeser and John M. Mayne, on behalf of NSN. *See Comp.* ¶ 7; *see also* Declaration of Brian Pemberton ("*Pemberton Decl.*"), ¶ 5. At the time the MSA was executed, Joe Kaeser was NSN's Head of Network Implementation – NAM, and his title was listed on the MSA signature page as "Head of NI." *See Pemberton Decl.*, ¶ 5.[1] At the time the MSA was executed, John Mayne was NSN's Head of Service Procurement & Standardization – NAM, and both he and Joe Kaeser worked at NSN's Atlanta office. *Id.* In fact, the MSA was executed by Mr. Kaeser and Mr. Mayne in Atlanta, and transmitted electronically to TNS. *Id.*

---

[1] The Complaint incorrectly states that Joe Kaiser executed the MSA as the Head of NJ operations for NSN. *See Comp.* ¶ 7.

The MSA was executed by John J. McCann ("McCann"), on behalf of TNS, and his position is listed on the MSA as CEO. *See Comp.*, ¶ 6; *see also* Declaration of Mark S. Melodia ("*Melodia Decl.*"), Exh. A, at 38.   While Plaintiff alleges in its Complaint that McCann was located in Raritan, New Jersey and executed the MSA on behalf of TNS while in New Jersey, no NSN representative took part in any meetings or negotiations related to the MSA in the state of New Jersey. *See Comp.*, ¶¶ 4, 6; *see also Pemberton Decl.*, ¶ 6.

The services provided by TNS under the terms of the MSA took place in or around the following cities: (i) Austin, TX, (ii) Houston, TX, (iii) Kansas City, MO, (iv) Chicago, IL, (v) Detroit, MI and (vi) Minneapolis, MN. *Id.* at ¶ 7.  TNS was NSN's supplier for their contract with T-Mobile in the Central and Southwest regions of the United States. *Id.* at ¶ 8.  NSN employees responsible for the day-to-day administration of services rendered by TNS pursuant to the MSA exclusively dealt with TNS employees located at the specific Project Sites (all located in the Central or Southwest regions), or at TNS' Richardson, TX headquarters. *See Pemberton Decl.*, ¶ 11.

The MSA specified that it was to be governed and interpreted in accordance with "the laws of the State of Texas without regard to its conflict of law provisions." *See Comp.* ¶ 14; *see also Melodia Decl.*, Exh. A, § 28.13.  The MSA also has a section titled "Dispute Resolution" that allows for arbitration and states

that "[t]he place of arbitration shall be Dallas, Texas and the proceedings shall be conducted in the English language. **NSN** may elect not to arbitrate the dispute, and if so, **NSN** may determine the city in which proceedings can be filed at its sole discretion." *See Melodia Decl.*, Exh. A, § 27.1 (emphasis in original). The MSA further specifies that all notices sent to TNS were to be sent to Mauricio Villalon, Director-Nokia National Account, 655 North Glenville Drive, Richardson, TX with a copy to John Dobmeier, President, 655 North Glenville Drive, Richardson, TX 75081. *Id.* at § 28.4. Notices sent to NSN were to be directed to Mike Branham, Sourcing Manager, 6000 Connection Drive, Irving, TX with a copy to Nokia Siemens Networks US LLC, Attn: Director of Legal Services, 1040 Crown Point Parkway, Suite 900, Atlanta, GA 30338. *Id.*

In late 2008 and throughout 2009 disputes occurred between TNS and NSN regarding payment for certain "out-of-scope" work TNS claimed to have performed. The parties attempted to resolve the dispute but were unsuccessful. Mr. David D. Brittain, Jr., Vice President and In-house Counsel for TNS ("TNS Counsel") sent a letter to Mike Branham, Sourcing Manager for NSN, dated June 18, 2009, in which he made certain allegations related to the disputed claims, and requested that TNS and NSN enter arbitration. On June 30, 2009, Roland Behm, Area Head of Legal and Compliance for NSN ("NSN Counsel"), responded to the June 18 letter rejecting NSN's claims and stating that the arbitration request was

premature as Article 27 of the MSA required each party to designate a senior executive to discuss such dispute and attempt resolution.  If the dispute could not be resolved within twenty-one days, then the dispute was to be settled by arbitration, unless NSN elected otherwise.  *Id.*, Exh. B.  TNS responded on July 2, 2009, acknowledging the dispute resolution and forum selection provisions of Article 27 of the MSA and designated John McCann as its senior executive representative, and on July 10, 2009, NSN designated Larry Taylor, Head of Services and located at NSN's Irving, TX office, as its senior executive representative.  *See id.*, Exh. C; *see also* Exh. D.

In a letter dated September 25, 2009, sent to TNS Counsel, NSN exercised its right to decline arbitration and elected to litigate the dispute with TNS.  *See id.*, Exh. E.  The letter referenced previous settlement offers made by NSN, as well as a meeting between representatives of TNS and NSN held in Texas, where it was discovered that TNS was in possession of confidential and internal NSN information (such materials being displayed to NSN representatives present at the meeting.)  *See id.*  NSN, as a sign of good faith, made one last settlement offer to TNS in an attempt to resolve the dispute.  At the end of the correspondence, NSN clearly stated that "[i]f NSN receives no response from TNS to this settlement offer within fourteen days, the offer will be withdrawn.  After that time and as per

Section 27.1 of the referenced agreement, NSN will inform TNS of the city in which TNS can institute proceedings on this matter." *Id.*

On October 23, 2009, TNS filed the instant suit in the Superior Court of New Jersey Law Division, Somerset County. *See Comp.* This suit, in violation of Section 27.1 of the MSA, was filed prior to receipt of notice from NSN indicating in what city or district TNS could institute proceedings. *See Melodia Cert.*, Exh. A, ¶27.1.

## III. ARGUMENT

### A.    The Northern District of Texas Is a More Convenient Forum.

Section 1404(a) authorizes a district court to transfer a case to any other district where venue is proper "[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  In determining whether the balance of convenience and the interest of justice tips in favor of transfer, a courts weigh several private and public interest factors:  (1) the plaintiff's forum preference; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties and witnesses; (5) the availability of compulsory process for the attendance of unwilling witnesses; (6) the relative ease and access to proof; (7) the locations of books and records; (8) local interest in deciding the controversy;  (9)  familiarity  of  the  forum  court  with  the  applicable  law; (10) congestion in either forum; (11) the unfairness of burdening citizens in an

unrelated forum with jury duty; and (12) practical considerations which could make litigation easier, more expeditious, or less expensive. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995); *see also Hoffer v. InfoSpace.com, Inc.*, 102 F. Supp. 2d 556, 571-72 (D.N.J. 2000); *Liggett Group, Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 527-28 (D.N.J. 2000).

The Northern District of Texas is a district "in which [this action] could have been brought." 28 U.S.C. § 1404(a); *see also* 28 U.S.C. § 1391(a) (venue is proper "in any district where any defendant resides if all defendants reside in the same state") and 29 U.S.C. § 1391(c) (a corporate defendant resides in any district where it is subject to personal jurisdiction). The private and public interest factors weigh strongly in favor of transfer to the United States District Court for the Northern District of Texas and, accordingly, the Court should transfer the present case to the Northern District of Texas.

### 1.    Plaintiff's Choice of a Foreign Forum Holds Little Weight.

"Although a plaintiff's choice of forum is ordinarily afforded significant weight, that factor diminishes where the plaintiff chooses a foreign forum rather than his or her home forum." *In re Consol. Parlodel Lit.*, 22 F. Supp. 2d 320, 323 (D.N.J. 1998); *see also Liggett*, 102 F. Supp. 2d at 530 (stating that plaintiff's choice of a forum other than state of residence is given less weight). Deference to a plaintiff's choice of forum "decreases even further where 'the central facts of a

lawsuit occur outside the chosen forum." *Consol. Parlodel*, 22 F. Supp. 2d at 324
(internal citations omitted); *see also Liggett*, 102 F. Supp. 2d at 530 ("Another
situation [where deference to plaintiff's choice of forum is curbed is] where the
choice of forum by a plaintiff has little connection with the operative facts of the
lawsuit").

Here, Plaintiff's choice of forum should be afforded little weight.  Plaintiff is
a Washington corporation, whose headquarters are in Richardson, TX.   *See
Melodia Cert.*, Exh. A, Preamble; *see also* Exh. F; Exh. G.  Not only are TNS'
headquarters located in Texas, but contrary to what is alleged in the Complaint, it
appears from TNS' web site that they do not even have an office or any permanent
operations in New Jersey. *See Comp.*, ¶ 4; *contrast to*, *Melodia Cert.*, Exh. H, (a
map displays TNS' three offices, located in Southern California, Richardson, TX,
and Washington, D.C.).  Not only does TNS have no real presence in New Jersey,
but none of the central facts of this lawsuit occurred within New Jersey:  the MSA
was not negotiated, executed, or performed in New Jersey; none of NSN's and few
if any of TNS's likely witnesses reside in New Jersey; neither TNS nor NSN has a
principal place of business in New Jersey; neither TNS nor NSN's business is
unique to New Jersey. *See Pemberton Decl.*, ¶¶ 6-14.  In fact, Plaintiff has failed
to allege any real significance of New Jersey to the instant action.   As far as
Defendant can tell, the only connection this matter has to New Jersey is that

McCann allegedly executed the MSA while located in Raritan, NJ (which the Complaint alleges is TNS' New Jersey Headquarters). *See Comp.*, ¶¶ 4, 6. However, as noted above, TNS' web site makes no mention of any New Jersey office. However, Conti Communications Inc. ("Conti"), which like TNS is a wholly owned subsidiary of Quanta Wireless Solutions Inc. ("Quanta"), *does* have headquarters in Raritan, NJ, and McCann is listed on their web-site as CEO. *See Melodia Cert.*, Exh. I. Neither Conti nor Quanta is alleged in the Complaint to have had any involvement in the work or contract or alleged disputes. *See Comp.* Moreover, NSN is unaware of anyone employed by Conti or Quanta (with the exception of McCann) having any role in the MSA or the work to be performed under it.

Because New Jersey is not Plaintiff's home forum and because the operative facts of this litigation are not centered in New Jersey, Plaintiff's choice of New Jersey as a forum should be given very little weight.

## 2.    Plaintiff Failed to Adhere to a Valid Forum Selection Clause

The MSA contains a provision which states "[t]he place of arbitration shall be Dallas, Texas and the proceedings shall be conducted in the English language. **NSN** may elect not to arbitrate the dispute, and if so, **NSN** may determine the city in which proceedings can be filed at its sole discretion." *See Melodia Decl.*, Exh. A, ¶ 27.1 (emphasis in original). TNS filed the instant suit in the Superior Court of

New Jersey Law Division, Somerset County. *Id.*, Exh. A. This suit was filed prior to notice from NSN indicating in what city or district TNS could institute proceedings, in violation of Section 27.1 of MSA. *See Melodia Cert.*, Exh. A, § 27.1. It should be noted that TNS acknowledged the applicability of the dispute resolution and forum selection provisions of Section 27.1 in its July 2, 2009 letter to NSN Counsel. It should be further noted that NSN reminded TNS of this contractual obligation by letter dated September 25, 2009, and indicated that if a proposed settlement were not accepted they would apprise TNS of the forum where the dispute could be brought. *See Melodia Cert.*, Exh E.

Where a valid forum selection clause exists, plaintiff bears the burden of demonstrating why it should not be bound by its contractual choice of forum. *See Park Inn Int'l, L.L.C. v. Mody Enters.*, 105 F. Supp. 2d 370, 378 (D.N.J. 2000). A forum selection clause will be invalidated only if it was the product of fraud or overreaching, if the agreed forum is so inconvenient as to deprive the litigant of his day in court, or where enforcement would contravene a strong public policy of the forum in which the suit is brought. *See The M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 32 L. Ed. 2d 513, 92 S. Ct. 1907 (1972). The forum selection clause in the MSA does not fall within any of these categories, designated by the United States Supreme Court, which would put its validity into question. Further, "the failure to read a contract will not excuse a party who signs it, nor will the

party's ignorance of its obligation." *Park Inn Int'l, L.L.C.*, 105 F. Supp. 2d at 374. In addition, even "[f]ailure to explain the terms of an agreement does not constitute fraud, overreaching or unconscionability so as to void a forum selection clause." *Id.* The Third Circuit has also rejected the argument that the lack of negotiation with respect to a forum selection issue shows that the clause was a term of adhesion and procured by overreaching or pressure. *See Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir.), *cert. denied*, 502 U.S. 908, 116 L. Ed. 2d 245, 112 S. Ct. 302 (1991) ("That there may not have been actual negotiations over [a forum selection] clause does not affect its validity").

The MSA was entered into by two sophisticated parties, both large well established companies with experience negotiating, executing and satisfying substantially similar contracts. Therefore, Plaintiff must be charged with notice of the valid forum selection clause which it agreed to be bound by when it executed the MSA, and Plaintiff's breach of its contractual obligations under this clause (particularly when Plaintiff previously acknowledged in its July 2, 2009 letter to NSN counsel the applicability of Section 27.1 of the MSA) should weigh heavily in favor of transferring this action to Defendant's preferred venue, the Northern District of Texas.

### 3.   Defendant NSN Prefers Texas as a Venue.

Although Courts have not generally given it as great weight as Plaintiff's choice, the Defendant's choice of forum is entitled to consideration whenever there is a motion for transfer.   The Defendant's choice of forum is entitled to weight because when a decision is made to transfer based on 28 *U.S.C.* 1404(a), a court must determine whether to transfer based on the convenience of *all* parties, not just the Plaintiff.   Defendant's rationale for preferring the Northern District of Texas over New Jersey is outlined below.

### 4.   The Claims Did Not Arise in New Jersey.

All claims in this action center around the parties performance under the MSA.   Plaintiff makes various contract, negligence, and fraud related claims, all based on its mistaken belief that it was not adequately compensated for work allegedly performed.   *See Comp.,* Counts One-Nine.   However, none of the services or work performed under the MSA took place in New Jersey.   *See Pemberton Decl.,* ¶ 8.   In fact, New Jersey was encompassed by a region for which T-Mobile had selected another telecommunications company altogether (Ericsson) to assist it with its capacity build-out.   *Id.*   Further, none of the day-to-day administration of the services rendered under the MSA, either on the TNS or NSN side, took place in New Jersey. *Id.,* ¶¶ 11, 12.   The *only* connection to New Jersey is McCann, and he did not take part in the day-to-day administration of the services

governed by the MSA, and therefore his materiality as a witness is negligible. *Id.*, ¶ 12. It is clear from the Complaint that it is the personnel (employed by both NSN and TNS) who took part in the daily administration of the MSA who will be the key witnesses in this matter. None of these people resides in New Jersey, and, in fact, most reside in Texas. *Id.*, ¶ 10.

### 5.   Convenience of the Parties Weighs in Favor of Transfer.

New Jersey courts have observed that "from an economic standpoint it certainly makes sense to conduct a trial . . . where only one party and witnesses have to travel rather than where both parties have to travel." *Liggett*, 102 F. Supp. 2d at 530 (ellipses in original; internal quotation omitted). There are no parties and only one possible witness (whose testimony would be of limited use for reasons set forth above) located in New Jersey. Thus, trial of the instant action in New Jersey will require Plaintiff, Defendant, and most, if not all, witnesses to travel to New Jersey. Accordingly, this factor does not favor retaining the action in New Jersey.

### 6.   The Northern District of Texas Provides Greater Convenience for Potential Witnesses.

In assessing the private interests of the parties, a court balances the convenience of potential witnesses. *See Liggett*, 102 F. Supp. 2d at 534. When considering a motion to transfer, courts distinguish between party and non-party witnesses, and accord more weight to the location where potentially unwilling non-

party witnesses would be amenable to compulsory process.  *See Id.*; *see also Nat'l Property Investors VIII v. Shell Oil Co.,* 917 F. Supp. 324, 328 (D.N.J. 1995).

New Jersey lacks any connection to the present lawsuit and there are no material witnesses – party or non-party – located in New Jersey.  In contrast to New Jersey, Texas is home to TNS' headquarters and also the residence of the TNS employees who NSN had the most interaction with in administering the MSA, as well as settling disputes between the parties arising under the MSA.  *See Pemberton Dec.*, ¶¶ 10-12.  In addition, NSN's primary place of business is located in Texas where many of the potential key witnesses in this action are employed.  *Id.*, ¶ 11-15.  Thus, Texas is the more convenient forum for both TNS' and NSN's potential witnesses.

### 7.    Transfer to Texas Enhances the Ease of Access to Witnesses and Documentary Evidence.

In determining the propriety of transfer, courts also consider access to witnesses and documentary evidence.  This factor also weighs in favor of transfer to the Northern District of Texas.  As the United States Supreme Court has stated:

> To examine 'the relative ease of access to sources of proof' and the availability of witnesses, the [D]istrict [C]ourt must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of the evidence cited by the parties is critical, or even relevant to the plaintiff's cause of action and to any potential defenses to the action.

*Liggett*, 102 F. Supp. 2d at 553 (citing *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988)) (alterations in original).  As this is a contract dispute in which Plaintiff alleges that the procedures dictated by the MSA were not followed by NSN, the issues relating to the Plaintiff's claims require the analysis of facts, documents, and testimony concerning the daily oversight of the services provided by TNS under the MSA.  As previously established, the Northern District of Texas will provide superior access to the personnel whose testimony will be necessary to demonstrate the actions of NSN as well as those of TNS.  In addition, since TNS' headquarters are located in Texas, and the TNS employees who had the most contact with NSN in regards to the MSA are based in its Texas office, it follows that much of the necessary documentary evidence will also be located in Texas.  Further, the three offices of NSN which took part in overseeing TNS's performance under the MSA are located in Washington, Illinois, and Texas; therefore, Texas is clearly more central than New Jersey to the location of potential witnesses and potential documentary evidence. *See Pemberton Decl.*, ¶¶ 13, 15.

### 8.      Texas Has a Local Interest in This Lawsuit.

Plaintiff cannot point to a single local New Jersey interest in the present action.  Plaintiff has no permanent operations or presence in New Jersey. *See Melodia Decl.*, Exh. H.  The Defendant does not maintain its principal place of business in New Jersey. *See Melodia Decl.*, Exh. A, Preamble.  The MSA was not

negotiated, executed, performed, or administered in or from New Jersey.  *See Pemberton Decl.*, ¶¶ 1-16.

In contrast to New Jersey, Texas has a strong local interest in this lawsuit. First, for reasons described herein, Texas is likely the "locus of the alleged culpable conduct" – (i) TNS is headquartered in Texas, (ii) Texas is the only venue where both NSN and TNS have permanent operations, (iii) Texas is the only venue where potential key witnesses of both TNS and NSN reside and (iv) many of the services provided by TNS, and all of the administration of such services, took place in Texas.  Plaintiff even concedes in its Complaint that "[a]t the time that the parties executed the MSA, the anticipated scope of TNS services was limited to Austin/Houston, Texas and Kansas City, Missouri." *Comp.*, ¶ 11.

Because much of allegedly culpable conduct occurred in Texas, and none occurred in New Jersey, Texas has a stronger local interest in adjudicating this dispute, and this factor therefore supports transfer.

### 9.      New Jersey Law Will Not Govern the Case.

An important public interest factor is the desire to have the case tried before judges familiar with the applicable law.  *Hoffer*, 102 F. Supp. 2d at 556.   In diversity actions, federal courts favor adjudication by the court that sits in the state whose substantive laws will govern the case, and a court may use this factor in its

evaluation of whether to grant a motion to transfer.  *See Dwyer v. General Motors Corp,* 853 F. Supp. 690, 694 (S.D.N.Y. 1994).

All claims made by the Plaintiff are state common law causes of action (breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, breach of implied contract, promissory estoppels, negligent misrepresentation and equitable fraud).  *See Comp.*, ¶¶ 64-141.  The MSA has a provision which states that "[t]his MSA is governed by and shall be interpreted in accordance with the laws of the state of Texas without regard to its conflicts of law provisions."  *See Melodia Cert.*, Exh. A, § 28.13.  Therefore, all claims in the Complaint will be decided based on Texas state common law, and it is therefore intuitive that a Federal District Court Judge sitting in the Northern District of Texas will have a much greater familiarity with Texas common law than a Judge in the District of New Jersey.  This factor weighs heavily in favor of transfer to Texas – not only is it in the interest of all parties to have their dispute decided in a forum most familiar with the applicable law, but it is also in the interest of the public to have matters adjudicated in the most efficient manner possible, and this simply cannot occur in a forum where unfamiliar law has to be researched and applied by the court prior to a determination of fault.

10.   **This Court Has More Pending Cases Than the Northern District of Texas.**

Courts also consider the relative backlog and caseloads of the potential forums. *Nat'l Property Investors VIII,* 917 F. Supp. at 329; *see also, e.g., Solomon v. Continental Am. Life Ins. Co.,* 472 F. 2d 1043, 1047 (3d. Cir. 1973); *Hardaway Constr., Inc. v. Conesco,* 583 F.Supp. 617, 621 (D.N.J. 1983). As of March 31, 2009 (the most recent record date), the District of New Jersey had 5,687 cases currently pending. In contrast, as of March 31, 2009 the Northern District of Texas had only 2,701 cases currently pending. *See Melodia Decl.,* Exh. K, Judicial Caseload Profiles (last visited January 5, 2010). This translates to approximately 236 pending civil cases per active District of New Jersey judge versus the comparable caseload of 180 pending cases per active Northern District of Texas judge. In addition, as of March 31, 2009, the median time between filing and disposition in the pre-trial phase (i.e. ruling on a dispositive motion) was 13.3 months in New Jersey and 7.4 months in the Northern District of Texas. *Id.* The relative backlog of cases in New Jersey as compared to the Northern District of Texas weighs in favor of transfer.

11.   **The Burden of Jury Duty Should Not Be Imposed on New Jersey Citizens.**

Another public interest factor that courts consider is whether the citizens of the forum state should be burdened with jury duty. The burden of jury duty "ought

not to be imposed upon the people of a community which have no relation to the litigation." *Liggett*, 102 F. Supp. 2d at 536. "New Jersey jurors should not be burdened with adjudicating a matter concerning decisions and[,] or[,] conduct which occurred predominantly outside the State of New Jersey." *Id.* (alterations in original). As New Jersey has no relation to the present litigation, its citizens should not be burdened with jury duty. This factor also supports a transfer of venue to the Northern District of Texas.

## IV.  CONCLUSION

The Northern District of Texas is a natural and proper forum to hear all claims made in Plaintiff's Complaint. Texas is where this case would have been filed had Plaintiff not preemptively filed in New Jersey, thereby violating the parties' contractual obligation. There is no just reason for this case to remain in the District of New Jersey, given the total lack of contacts between this case and New Jersey. Thus, the interests of justice require a transfer to the Northern District of Texas.

**REED SMITH LLP**

By: */s/ Mark S. Melodia*
    Mark S. Melodia

Attorneys for Defendant,
Nokia Siemens Networks US LLC

Dated:  January 6, 2010