# EXHIBIT 1

**REED SMITH LLP**
*Formed in the State of Delaware*
Mark S. Melodia, Esquire
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, N.J. 08540
Tel. (609) 987-0050
Attorneys for Defendant,
Nokia Siemens Networks US, LLC

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## (TRENTON VICINAGE)

| | |
|---|---|
| **ADVANCED TECHNOLOGIES AND INSTALLATION CORPORATION d/b/a TELECOM NETWORK SPECIALISTS,** | **DOCUMENT ELECTRONICALLY FILED** |
| **Plaintiff,** | **CIVIL ACTION NO. _____** |
| v. | |
| **NOKIA SIEMENS NETWORKS US, LLC,** | **DEFENDANT'S NOTICE OF REMOVAL** |
| **Defendant.** | |

To:    The United States District Court
       For the District of New Jersey
       Clarkson S. Fisher Building & U.S. Courthouse
       402 East State Street, Room 2020
       Trenton, NJ 08608

       Florio Perrucci Steinhardt & Fader, L.L.C.
       John F. Neary
       218 Route 17 North, Suite 300
       Rochelle Park, New Jersey  07662
       *Attorneys for Plaintiff*

    **PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332, 1441 and 1446,

Defendant Nokia Siemens Networks US, LLC ("Defendant or "NSN"), by and through its

counsel, Reed Smith LLP, hereby removes this action from the Superior Court of New Jersey,

Law Division, Somerset County, in which it is pending, to the United States District Court for the District of New Jersey.  In support of this Notice of Removal, Defendant states as follows:

1.      On October 23, 2009, Plaintiff Advanced Technologies and Installation Corporation d/b/a Telecom Network Specialists ("Plaintiff" or "TNS") commenced an action against Defendant in the Superior Court, Law Division, Somerset County, New Jersey, where it is presently captioned <u>Advanced Technologies and Installation Corporation d/b/a Telecom Network Specialists v. Nokia Siemens Networks US, LLC,</u> Docket No. L 1940-09.  Through its Complaint, Plaintiff attempts to allege, *inter alia*, various contract and common law tort claims arising from a service contract entered into between Plaintiff and Defendant.  A true copy of Plaintiff's Complaint is attached hereto as "Exhibit A".

2.      On November 10, 2009, Plaintiff served upon Defendant the above reference Complaint and accompanying summons.  Proof of such service and the date on which it was received is attached hereto as "Exhibit B".  This Notice of Removal is therefore timely under 28 U.S.C. § 1446(b), as it was filed on or before December 10, 2009 – not more than thirty-days after the date on which Defendant received a copy of the Complaint.

3.      Defendant is a Delaware Limited Liability Company.  Defendant is wholly-owned by Nokia Siemens Networks Holdings USA Inc. ("NSN Holdings").  NSN Holdings is a Delaware corporation whose principal place of business is Delaware.  Defendant is, therefore, a citizen of Delaware for purposes of 28 U.S.C. § 1332(a)(1) and (c)(1).

4.      Upon information and belief, Plaintiff is a Washington corporation whose primary place of business is located at 655 N. Glenville Drive, Richardson, TX  75081.  Screen shots from Plaintiffs' web-site which describe Plaintiff as being headquartered in Richardson, TX, are hereto attached as "Exhibit C".  In addition, the Complaint, attached hereto as "Exhibit A" states that Plaintiff is a Washington corporation.  Plaintiff is, therefore, a citizen of Washington and Texas for purposes of 28 U.S.C. § 1332(a)(1) and (c)(1).

5.      Plaintiff has demanded judgment in its favor for $11,327,283.80.  See the Complaint, attached hereto as "Exhibit A".  That amount far surpasses the $75,000 amount in controversy requirement of 28 U.S.C. § 1332(a).

6.      Because this Court has original jurisdiction over this action due to the complete diversity of citizenship of the parties under 28 U.S.C. § 1332(a)(1) and an amount in controversy above the $75,000 threshold under 28 U.S.C. § 1332(a), this action is properly removable pursuant to 28 U.S.C. § 1441(b).

7.      No proceedings have occurred before the Superior Court of New Jersey other than the filing of Plaintiff's Complaint.

8.      There are no additional Defendants to consent to this removal.

9.      This removal is made without waiver of any defenses, including improper service of process and insufficiency of service of process.

10.     Written notice of the filing of this Notice of Removal will be served upon counsel of record for Plaintiff in accordance with 28 U.S.C. § 1446(d).

11.     A true and correct copy of this Notice of Removal will also be filed with the Clerk of the New Jersey Superior Court and the Clerk of Superior Court of New Jersey, Somerset, Law Division, in accordance with 28 U.S.C. § 1446(d), attached hereto as Exhibit "D".

**WHEREFORE**, Defendant hereby gives notice that this action is removed from the Superior Court of New Jersey, Somerset County, Law Division, to the United States District Court for the District of New Jersey.

**REED SMITH LLP**
Attorneys for Defendant
Nokia Siemens Networks US, LLC


By: s/Mark S. Melodia
    Mark S. Melodia
    Princeton Forrestal Village
    136 Main Street, Suite 250
    Princeton, N.J. 08540


Dated:  December 10, 2009

JS 44   (Rev. 12/07, NJ 5/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Advanced Technologies and Installation Corporation d/b/a Telecom Network Specialists, A Washington Corporation

**(b)** County of Residence of First Listed Plaintiff

**(c)** Attorney's (Firm Name, Address, Telephone Number and Email Address)

John F. Neary, Esquire
Florio Perrucci Steinhardt & Fader, LLC
218 Route 17 North, Suite 300
Rochelle Park, New Jersey 07662

## DEFENDANTS

Nokia Siemens Networks US, LLC, A Delaware Limited Liability Company

County of Residence of First Listed Defendant

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

Reed Smith, LLP 136 Main St., Ste. 250 Princeton, NJ 08543

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question (U.S. Government Not a Party)

☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                        and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☐ 1  Original Proceeding

☒ 2  Removed from State Court

☐ 3  Remanded from Appellate Court

☐ 4  Reinstated or Reopened

☐ 5  Transferred from another district (specify)

☐ 6  Multidistrict Litigation

☐ 7  Appeal to District Judge from Magistrate Judgement

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing. (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332(a), 1332(a)(1), 1332(c)(1), 1441(b), 1446(b),

Brief description of cause:
Plaintiff alleges contract and various related common law tort claims

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S)

(See instructions):

JUDGE _____   DOCKET NUMBER _____

Explanation:

DATE   12/10 /09

SIGNATURE OF ATTORNEY OF RECORD

Mark S. Melodia, Esq., Attorney for Defendant Nokia Siemens Networks US, LLC

JS 44 Reverse (Rev. 12/07, NJ 1/08)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.** **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: <u>47 USC 553</u>
Brief Description: <u>Unauthorized reception of cable service</u>

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases. Provide a brief explanation of why the cases are related.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**REED SMITH LLP**
*Formed in the State of Delaware*
Mark S. Melodia, Esquire
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, N.J. 08540
Tel. (609) 987-0050
Attorneys for Defendant,
Nokia Siemens Networks US, LLC

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
(TRENTON VICINAGE)

| | |
|---|---|
| ADVANCED TECHNOLOGIES AND INSTALLATION CORPORATION d/b/a TELECOM NETWORK SPECIALISTS,<br><br>        **Plaintiff,**<br><br>v.<br><br>NOKIA SIEMENS NETWORKS US, LLC,<br><br>        **Defendant.** | DOCUMENT ELECTRONICALLY FILED<br><br>CIVIL ACTION NO. _____<br><br><br><br>**CERTIFICATION OF MARK S. MELODIA, ESQ.** |

I, Mark S. Melodia, Esq., of full age, hereby certify and declare as follows:

1.      I am an attorney-at-law of the State of New Jersey and a Partner of the law firm of Reed Smith LLP, counsel for Defendant Nokia Siemens Networks US, LLC ("Defendant").

2.      Attached hereto as **Exhibit A** is a true and correct copy of Plaintiff's Complaint filed in the Superior Court of New Jersey, Law Division, Somerset County in the above-captioned matter.

3.      Attached hereto as **Exhibit B** is a true and correct copy of the Summons served upon Nokia Siemens Networks US, LLC and filed in the Superior Court of New Jersey, Law Division, Somerset County in the above-captioned matter.

4.   Attached hereto as **Exhibit C** is a true and correct copy of the Screen shots from Plaintiffs' web-site which describe Plaintiff as being headquartered in Richardson, TX.

5.   Attached hereto as **Exhibit D** is a true and correct copy of the Notice of Removal provided to the Superior Court of New Jersey, Law Division, Somerset County.

Pursuant to 28 U.S.C. §1746, I certify under penalty of perjury under the laws of the United States of America that the foregoing statements made by me are true and correct.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:  December 10, 2009

By:  s/Mark S. Melodia
Mark S. Melodia

# EXHIBIT A

009
141889
$200

FILED

OCT 23 2009

CIVIL DIVISION
SOMERSET COUNTY

**FLORIO PERRUCCI STEINHARDT & FADER, L.L.C.**
218 Route 17 North, Suite 300
Rochelle Park, New Jersey 07662
(201) 843-5858
Attorneys for Plaintiff, Advanced Technologies and
  Installation Corporation d/b/a Telecom Network Specialists

| | |
|---|---|
| **ADVANCED TECHNOLOGIES AND INSTALLATION CORPORATION d/b/a TELECOM NETWORK SPECIALISTS, a Washington Corporation,** | **SUPERIOR COURT OF NEW JERSEY LAW DIVISION: SOMERSET COUNTY** |
| **Plaintiff,** | Docket No.: L 1940-09 |
| vs. | Civil Action |
| **NOKIA SIEMENS NETWORKS US, LLC, a Delaware Limited Liability Company,** | **COMPLAINT AND JURY DEMAND** |
| **Defendant.** | |

Plaintiff, **Advanced Technologies and Installation Corporation d/b/a Telecom Network Specialists,** by way of Complaint against Defendant, **Nokia Siemens Networks US, LLC,** says as follows:

<u>**PARTIES**</u>

1.     At all times relevant hereto, Plaintiff, Advanced Technologies and Installation Corporation d/b/a Telecom Network Specialists ("TNS"), a Washington corporation, was, and still is, in the business of supplying telecommunications infrastructures, including, but not limited to, cellular telephone towers, inclusive of certain associated materials and equipment.

2.     At all times relevant hereto, Defendant, Nokia Siemens Networks US, LLC ("NSN"), a Delaware corporation authorized to do business in New Jersey, was

contractually engaged by various telecommunications network operators to supply telecommunications infrastructures, inclusive of cellular telephone towers and appurtenances.

## FACTUAL BACKGROUND

### The Parties' Master Services Agreement

3.     NSN negotiated with TNS for services, inclusive of certain associated materials and equipment, needed by NSN in order to supply its customers, *i.e.*, T-Mobile Wireless and T-Mobile USA (collectively "T-Mobile"), with telecommunications infrastructures at various locations ("TNS Services").

4.     John J. McCann ("McCann"), TNS Chief Executive Officer located at TNS' New Jersey office in Raritan, New Jersey, represented TNS in the contract negotiations with NSN's representatives.

5.     On or about May 21, 2007, the aforesaid negotiations resulted in the mutual execution of a written Master Services Agreement ("MSA") between the parties.

6.     McCann executed the MSA on behalf of TNS while located at TNS' New Jersey headquarters.

7.     Joe Kaeser, head of NSN's New Jersey operations, and John M. Mayne, head of NSN's Service Procurement & Standardization, executed the MSA on behalf of NSN.

8.     The MSA was, by its express terms, to have a three-year life, unless terminated earlier in accordance with its termination provisions. (¶ 21.1.)

9.     The MSA's purpose was to define the terms and conditions governing

2

the parties' respective obligations with respect to TNS Services, which were anticipated to be ordered by NSN under the terms of supplemental agreements between the parties (¶ 2.1), of which, ultimately, there were five (5).

10.    The five (5) supplements to the MSA resulted in orders for TNS Services needed by NSN in order to satisfy its particular contractual commitments to T-Mobile and TNS' compensation therefor. McCann was involved in the review and TNS' approval of these supplements.

11.    At the time that the parties executed the MSA, the anticipated scope of TNS Services was limited to Austin/Houston, Texas and Kansas City, Missouri.

12.    The final geographical scope of TNS Services consisted of the following:

    (a)    Austin/San Antonio, Texas (TNS was Project Management Support Service Supplier ("PMSS") and the General Contractor ("GC"));

    (b)    Houston, Texas (TNS was the GC));

    (c)    Kansas City, Missouri (TNS was the PMSS and the GC);

    (d)    Chicago, Illinois (TNS was the GC);

    (e)    Detroit, Michigan (TNS was the GC); and

    (f)    Minneapolis, Minnesota (TNS was the GC).

13.    TNS' New Jersey office was involved in the day-to-day administration of the parties' MSA, as supplemented and modified.

14.    The MSA specified that it was to be governed and interpreted in accordance with "the laws of the State of Texas without regard to its conflict of law provisions." (¶ 28.13).

15.     The MSA specified the procedure for incorporating additional or different services and establishing TNS' compensation therefor. (¶¶ 2.1, 2.4, & 11.5 – 11.8).

## Procedures Re: TNS' Claims for Changes, Extra Works, Extra Site Visits, and Pass-Through Costs

16.     The MSA specified the procedures to be followed with respect to "changes" to TNS Services (Art. 4), TNS' claims for out-of-scope work, including downtime and cost to correct inaccurate NSN Purchase Orders (¶11.8), TNS' claims for pass-through costs ("PTC") (¶11.6), and TNS' claims for extra site visits ("ESV") (¶11.5). (Hereinafter these categories of services, which include certain associated materials and equipment, are collectively referred to as "Out-of-Scope Services.")

17.     Pursuant to Article 4 of the MSA, changes to the general scope of TNS Services could be requested by either party pursuant to a Change Order Request and, where the parties agreed upon the change, a NSN Purchase Order was to be issued prior to performance of the changed work.

18.     If the parties could not agree upon a change proposed by NSN pursuant to Article 4, NSN had the right to direct that such change be performed by TNS via a "Change Directive," subject to TNS' right to pursue a claim for additional compensation and/or time. (¶4.2(d)). Article 4 changes could also be implemented via an e-mail directive by NSN to TNS, which was to be followed, within thirty (30) calendar days of TNS' completion of such changes, by a TNS Change Order Request and, ultimately, corresponding Purchase Order from NSN. (¶11.7).

19.     The MSA-specified time frame for TNS to submit claims for payment for "Extra Works" was within thirty (30) calendar days of completion. (¶11.8).

20.     The MSA-specified time frame for TNS to submit a Change Order Request for PTC to NSN was within thirty (30) calendar days of completion of such services. (¶11.6). The intent of this PTC provision was to require that TNS communicate its PTC claim in sufficient time to allow NSN to, in turn, pass through such TNS charges to T-Mobile.

21.     As to TNS' entitlement to be compensated for ESV, TNS was required to submit a payment claim for same within thirty (30) calendar days of completion. (¶1.7 of Supplement # 1 to MSA).

22.     The MSA further specified that, should TNS fail to comply with the thirty (30) day post-completion time constraints applicable to TNS' compensation for Out-of-Scope Services, TNS' entitlement would be deemed waived. (Articles 3, 4, and 11).

23.     The intent of such time constraints was to avoid prejudice to NSN resulting from a lack of actual knowledge of potential extra costs, not to simply penalize TNS and bestow a windfall on NSN.

24.     By virtue of TNS' daily reports and otherwise, NSN had contemporaneous knowledge of precisely what services (in-scope and out-of-scope) were being rendered.

25.     Compensation for the foregoing various categories of TNS' Out-of-Scope Services was to be provided, ultimately, pursuant to NSN-executed Purchase Orders, Change Orders or Change Directives. (Art. 3).

26.     NSN was to make payment within forty-five (45) days after issuance of a TNS invoice. (¶1.3(e) of Supplement # 1 to MSA).

**NSN's Knowledge of TNS' Out-of-Scope Services**

27.     During the course of TNS' performance of TNS Services, NSN

authorized TNS to perform a very substantial amount of Out-of-Scope Services.

28.   Over the course of TNS' performance, NSN altered the procedural requirements pertaining to TNS' Out-of-Scope Services, including, but not limited to:

   (a)   extending the time for TNS to submit claims or Change Order Requests;

   (b)   waiving any need for an executed Purchase Order or Change Order to recover compensation;

   (c)   advising TNS that, in connection with any PTC, TNS' submission of a request for compensation would be deemed timely if received in time for NSN to, in turn, invoice T-Mobile therefore; and

   (d)   authorizing TNS to perform such services on the basis of:

      (i)   informal verbal/written directions by NSN's project managers,

      (ii)   e-mail authorizations by NSN, or

      (iii)   NSN's verbal/written acceptance of TNS' written price quotes.

29.   The parties' course of dealing and pattern of conduct reasonably induced TNS to believe that, as long as NSN had actual knowledge that TNS was performing Out-of-Scope Services, NSN would fairly compensate TNS for same.

30.   NSN ratified, condoned, and accepted any untimely claims or Change Order Requests by TNS.

31.   In fact, in excess of thirty-five percent (35%) of the total value of TNS Services constituted Out-of-Scope Services.

32.   In each instance of TNS' performance of such Out-of-Scope Services:

   (a)   TNS complied with the MSA's procedural requirements, as modified or waived by NSN;

(b)    NSN had prior actual notice of such performance as well as TNS' contention that it constituted compensable, extra services; and

(c)    NSN had, in some manner, pre-approved and/or, after the fact, ratified TNS' performance as being compensable.

33.    All of TNS' Out-of-Scope Services and base-scope services were completed and fully compliant with all applicable contractual requirements, *i.e.*, there is no issue as to quality or timeliness, and such services benefited NSN and T-Mobile, which has had the beneficial use of such services for the last twenty-three (23) months.

## Breaches by NSN of the MSA, as Supplemented and Modified

34.    NSN breached the parties' MSA, as supplemented and modified, in numerous respects, including, but not limited to, the following:

(a)    NSN failed to issue timely payments to TNS;

(b)    NSN failed to issue and/or timely issue warranted Change Orders to TNS;

(c)    NSN failed to timely respond to TNS' Change Order Requests;

(d)    NSN wrongfully rejected TNS' Change Order Requests;

(e)    NSN failed to issue and/or timely issue warranted Purchase Orders;

(f)    NSN failed to issue a Purchase Order to TNS notwithstanding a previously issued Change Order for such work;

(g)    NSN directed TNS to perform Out-of-Scope Services without strictly complying with contractual requirements;

(h)    NSN failed to compensate and/or timely compensate TNS for fully compliant and timely in-scope services and Out-of-Scope Services;

(i)    NSN improperly attempted to unilaterally alter the timing requirements for TNS' claims for extra services to TNS' disadvantage;

Case 3:09-cv-06233-FLW-TJB   Document 21-1   Filed 12/10/09   Page 18 of 20

(j)    NSN issued Purchase Orders that did not match with the underlying Change Orders;

(k)    NSN rejected compensation for certain Out-of-Scope Services as to which Purchase Orders had issued, claiming that the underlying Change Order Requests were untimely;

(l)    NSN issued Purchase Orders to TNS in connection with matters covered by a proposed Supplement to the MSA, which had yet to issue; and

(m)    NSN failed to properly and effectively administer the procedures of the MSA, as supplemented and modified, pertaining to TNS' compensation, including, but not limited to, the following:

    (i)    Failing to timely issue accurate Purchase Orders to TNS and, as a result, requiring TNS to perform a substantial amount of compensable extra work correcting same;

    (ii)    Failing to have, at all times, a properly functioning e-mail system, which would allow TNS to timely communicate to NSN information pertaining to its compensation for services rendered;

    (iii)    Failing to properly record and track the parties' communications regarding TNS' Out-of-Scope Services and compensation therefor;

    (iv)    Failing to timely provide TNS with updated reports on the status of TNS' Change Order Requests;

    (v)    Repeatedly losing TNS' Change Order Requests necessitating that TNS supply replacements, which NSN then misconstrued as new *untimely* Change Order Requests;

    (vi)    Failing to clearly and timely delineate and support its rejections of TNS' Change Order Requests;

    (vii)    Failing to generate "control numbers" which accurately identified TNS' Change Order Requests with resultant confusion and erroneous determinations by NSN as to TNS' entitlement;

    (viii)    Mischaracterizing TNS' submissions or the nature

of the services provided by TNS;

(ix)  Improperly rejecting TNS' proper claims for extra compensation, despite the fact that, upon information and belief, NSN had sought and received payment from T-Mobile for such uncompensated TNS charges;

(x)  Upon information and belief, negligently or deliberately misrepresenting to T-Mobile that it had paid or was going to pay TNS' PTC for which NSN had billed T-Mobile;

(xi)  Upon information and belief, negligently or deliberately engaging in a pattern of billing wherein T-Mobile was being routinely overcharged by virtue of NSN's intention not to pay TNS for the TNS charges NSN was billing to T-Mobile, plus NSN's mark-up;

(xii)  Depending upon which representative of NSN TNS was communicating with, regularly providing TNS with inconsistent positions regarding TNS' obligations and entitlement;

(xiii)  Failing to maintain accurate books and records as required by Attachment No. 6 to MSA Supplement # 4;

(xiv)  Unilaterally and persistently modifying procedures relating to the processing of claims by TNS for extra compensation and further confusing such process by providing for different procedures in different markets being serviced by TNS; and

(xv)  Requiring that TNS re-submit Change Order Requests in order to comply with NSN's unilateral changes to Change Order procedures.

35.  NSN rejected $2,324,493.07 due to TNS for Out-of-Scope Services on the incorrect basis that the related Change Order Requests were untimely, notwithstanding NSN's relaxation of any applicable time constraints.

36.  TNS' Out-of-Scope Services valued at $1,289,088.50 were wrongfully

9

rejected by NSN on the basis that they were covered within TNS' base-scope services.

37.     NSN's rejections of other TNS requests for compensation for Out-of-Scope Services cover a wide range of baseless allegations, including, but not limited to, lack of back-up documentation, claims that certain work was warranty work, duplicate Change Orders, and work completed by others.

38.     NSN has the right to audit TNS in order to verify the amounts claimed, but to date NSN has not availed itself of that right.

## Total Value of TNS' Performance Under the MSA

39.     The Base Purchase Order value of TNS' work is $29,654,824.00.

40.     NSN has paid, to date, the sum of $28,141,988.00, leaving a $1,512,836.00 balance due and owing to TNS for base-scope work.

41.     The total value of TNS' Out-of-Scope Services is $16,942,967.51.

42.     The total value of TNS' base-scope services and its Out-of-Scope Services is $46,597,791.51.

## Balance Due to TNS For Base-Scope Services

43.     NSN owes TNS a balance of $1,512,836.00 for TNS' base-scope services. Nevertheless, NSN has failed to make this $1,512,836.00 payment in breach of its payment obligation.

## Balance Due TNS For Services Rendered Beyond Base Scope

### A.     Amount Admitted by NSN to be Due TNS for Certain Out-of-Scope Services

44.     The aforesaid total base-scope value of $29,654,824.00 was supplemented by various Out-of-Scope Services totaling $16,942,967.51, of which amount NSN has admitted TNS entitlement in the sum of $5,615,683.71.

45.     Of this $5,615,683.71 entitlement, NSN has paid, to date, the sum of $3,939,482.00.

46.     NSN owes TNS a balance of $1,676,201.71 for TNS' admitted entitlement for certain Out-of-Scope Services.

**B.     Additional Amount Due to TNS for Out-of-Scope Services**

47.     Aside from the foregoing TNS entitlement of $1,512,836.00 for base-scope services and the $1,676,201.71 admittedly due it for certain Out-of-Scope Services, TNS is entitled to $11,327,283.80 for properly and timely performed additional Out-of-Scope Services.

48.     TNS has fully complied with all contract procedures pertaining to its entitlement to this $11,327,283.80. However, if there were any technical violations, NSN is precluded from asserting same by virtue of its contract breaches. Further, NSN is estopped from asserting them, has waived them and/or has ratified TNS' procedures and entitlement.

49.     NSN was well aware, before and during TNS' performance of its Out-of-Scope Services, that TNS reasonably expected to be paid extra for same by NSN and NSN made no attempt to correct this reasonable perception.

50.     In many cases, TNS has documented authorizations and approvals by NSN of these uncompensated Out-of-Scope Services, many being via e-mail, which is a specified methodology for authorizing extra services.

51.     NSN clearly benefited economically from all such uncompensated Out-of-Scope Services.

52.     To the extent that NSN has provided explanations for nonpayment of this

11

$11,327,283.80 debt, they have largely been predicated upon erroneous information, inclusive of incorrect information generated by its grossly negligent administration of the MSA, as supplemented and modified.

53.    NSN's $11,327,283.80 debt includes a substantial amount of PTC, which, upon information and belief, NSN passed along to T-Mobile, with its mark-up. Upon information and belief, T-Mobile paid NSN for the PTC. NSN failed to compensate TNS for the PTC.

54.    This $11,327,283.80 debt also includes a substantial amount for TNS' compensable "downtime" totaling $3,093,620.00. NSN's representatives have conceded partial liability for such downtime, but NSN has opted to not process payment for any part of this debt.

55.    This $11,327,283.80 debt also includes $824,676.00 in TNS administrative costs incurred in order to correct NSN's chronically flawed Purchase Orders and $520,726.00 in administrative costs to assemble, copy, and provide to NSN, at NSN's request, voluminous previously supplied documentation supportive of TNS' claims.

56.    In August 2007, NSN agreed that TNS should review and correct these Purchase Orders and that TNS would be compensated for such effort.

57.    Ultimately, TNS' personnel had reviewed 66,701 separate line items and, of those items, 5,775 were deleted and 34,447 were re-worked.

**Total Due TNS for Base-Scope Services and TNS' Admitted Entitlement for Certain Out-of-Scope Services**

58.    The combination of the amount owed by NSN to TNS for base-scope services ($1,512,536.00) and Out-of-Scope Services as to which NSN has admitted

12

Case 3:09-cv-06233-FLW-TJB   Document 1   Filed 12/10/09   Page 14 of 29

TNS' entitlement ($1, 676,201.71) is $3,188,737.71.

59.    NSN has indicated to TNS a willingness to pay this $3,188,737.71 sum provided, however, that TNS first provide a release of some additional alleged liability of NSN, which would deprive TNS of additional compensation to which TNS is contractually entitled.

60.    This decision by NSN to hold hostage payments admittedly due TNS pending NSN's receipt of such a release is a manifest violation of NSN's payment obligation under the MSA, as supplemented and modified, as well as NSN's implied covenant of good faith and fair dealing.

**Grand Total Owed TNS for Base-Scope and All (Admitted and Contested) Out-of-Scope Services**

61.    In sum, TNS is owed $1,512,836.00 for its base-scope services, its admitted $1,676,201.71 entitlement for certain Out-of-Scope Services, and its $11,327,283.80 entitlement for certain other Out-of-Scope Services. This amounts to a grand total owed TNS of $14,516,321.51.

62.    NSN has not asserted, and is not entitled to, any credits or offsets against such $14,516,321.51 indebtedness.

**Conditions Precedent**

63.    All conditions precedent to TNS' bringing this action have been either fully satisfied or expressly or impliedly waived by NSN.

**COUNT ONE**
*(Breach of Contract – Base Scope Services)*

13

64.    TNS incorporates herein by reference all of its prior allegations with the same force and effect as if fully set forth herein.

65.    TNS properly and fully performed all of its base-scope services and any procedural requirements of the MSA regarding TNS' entitlement to be paid this $1,512,836.00 were fully satisfied by TNS, waived by NSN, or NSN is estopped by its representations, acts and/or omissions from enforcing same, including, but not limited to, NSN's prior contract breaches.

66.    NSN has breached the MSA by, among other things, failing to pay TNS the $1,512,836.00 balance owed TNS for such base-scope services, which balance was due and owing as of November 1, 2008.

67.    NSN has not asserted and is not entitled to any credits or offsets with respect to such liability.

68.    Despite TNS' repeated and proper demands upon NSN for payment of this bona fide $1,512,836.00 contractual obligation, NSN has improperly failed to make payment.

69.    As a direct, proximate, and foreseeable result of the foregoing, TNS has been, and continues to be, damaged.

70.    As a direct, proximate, and foreseeable result of the aforesaid payment breach by NSN, TNS was required to retain the services of the undersigned legal counsel to prosecute its claims against NSN. Consequently, NSN is liable to TNS for its reasonable and necessary attorneys' fees incurred for the preparation and trial of this claim, plus additional sums in the event of an appeal, all as provided by Chapter 38 of the Texas Civil Practice and Remedies Code.

14

**WHEREFORE**, Plaintiff, Advanced Technologies and Installation Corporation d/b/a Telecom Network Specialists, hereby demands Judgment in its favor against Defendant, Nokia Siemens Networks US, LLC, for $1,512,836.00 in compensatory damages or such greater or lesser sums as the trial proofs may justify, together with the payment of interest, attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, costs of suit, and all such further and additional relief as the Court deems just and proper.

## COUNT TWO
*(Breach of Contract – TNS' Entitlement Admitted by NSN for Certain Out-of-Scope Services)*

71.     TNS incorporates herein by reference all of its prior allegations with the same force and effect as if fully set forth herein.

72.     TNS, as aforesaid, properly and fully performed uncompensated Out-of-Scope Services having a value of $1,676,201.71, as to which NSN has acknowledged TNS' entitlement.

73.     NSN has not asserted and is not entitled to any credits or offsets with respect to such liability.

74.     Any procedural requirements of the MSA, as supplemented and modified, regarding TNS' entitlement to be paid this $1,676,201.71 by NSN were fully satisfied by TNS, waived by NSN, or NSN is estopped by its representations, actions and/or omissions from enforcing same, including, but not limited to, NSN's prior contract breaches.

15

75.     NSN has breached the MSA by failing to pay TNS this $1,676,201.71 balance owed for such services, which balance was due and owing to TNS as of November 1, 2008.

76.     Despite TNS' repeated and proper demands upon NSN for payment of this $1,676,201.71 obligation, NSN has failed to make payment.

77.     As a direct, proximate, and foreseeable result of the foregoing, TNS has been, and continues to be, damaged.

78.     As a direct, proximate, and foreseeable result of the aforesaid payment breach by NSN, TNS was required to retain the services of the undersigned legal counsel to prosecute this claim against NSN. Consequently, NSN is liable to TNS for its reasonable and necessary attorneys' fees incurred for the preparation and trial of this matter, plus additional sums in the event of an appeal, all as provided by Chapter 38 of the Texas Civil Practice and Remedies Code.

**WHEREFORE**, Plaintiff, Advanced Technologies and Installation Corporation d/b/a Telecom Network Specialists, hereby demands Judgment in its favor against Defendant, Nokia Siemens Networks US, LLC, for $1,676,201.71 in compensatory damages or such greater or lesser sums as the trial proofs may justify, together with the payment of interest, attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, costs of suit, and all such further and additional relief as the Court deems just and proper.

## COUNT THREE
### *(Breach of Contract – Miscellaneous Out-of-Scope Services)*

79.     TNS incorporates herein by reference all of its prior allegations with the same force and effect as if fully set forth herein.

16

80.     TNS properly and fully performed additional Out-of-Scope Services heretofore valued at $11,327,283.80, as to which NSN has not admitted liability, but as to which TNS is entitled.

81.     NSN has not asserted and is not entitled to any credits or offsets with respect to such liability.

82.     Any procedural requirements regarding TNS' entitlement to be paid this $11,327,283.80 were fully satisfied by TNS, waived by NSN, or NSN is estopped by its acts and/or omissions from enforcing same, including, but not limited to, NSN's prior contract breaches.

83.     NSN has breached the MSA by failing to pay TNS this $11,327,283.80, which was due and owing as of November 1, 2008.

84.     Despite TNS' repeated and proper demands upon NSN for payment of this $11,327,283.80 obligation, NSN has failed to make payment.

85.     As a direct, proximate, and foreseeable result of the foregoing, TNS has been, and continues to be, damaged.

86.     As a direct, proximate, and foreseeable result of the aforesaid payment breach by NSN, TNS was required to retain the services of the undersigned legal counsel to prosecute this claim against NSN. Consequently, NSN is liable to TNS for its reasonable and necessary attorneys' fees incurred for the preparation and trial of this matter, plus additional sums in the event of an appeal, all as provided by Chapter 38 of the Texas Civil Practice and Remedies Code.

**WHEREFORE**, Plaintiff, Advanced Technologies and Installation Corporation d/b/a Telecom Network Specialists, hereby demands Judgment in its favor against

17

Defendant, Nokia Siemens Networks US, LLC, for $11,327,283.80 in compensatory damages or such greater or lesser sums as the trial proofs may justify, together with the payment of interest, attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, costs of suit, and all such further and additional relief as the Court deems just and proper.

## COUNT FOUR
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

87.   TNS incorporates herein by reference all of its prior allegations with the same force and effect as if fully set forth herein.

88.   NSN impliedly covenanted under the MSA to deal with TNS fairly and in good faith.

89.   NSN breached this covenant of good faith and fair dealing by, among other things:

    (a)    refusing to timely pay TNS the sum of $14,516,321.51 for the uncompensated TNS Services so valued;

    (b)    withholding payment of undisputed TNS entitlement in an improper effort to economically coerce TNS into releasing its meritorious claims against NSN for additional NSN liability; and

    (c)    billing to and, upon information and belief, collecting from T-Mobile uncompensated TNS Services.

90.   NSN has not asserted and is not entitled to any credits or offsets with respect to such liability.

91.   As a direct, proximate, and foreseeable result of NSN's breach of said implied covenant of good faith and fair dealing, TNS has been, and continues to be, damaged.

18

92.     Despite TNS' repeated and proper demands upon NSN for payment of this owed sum of $14,516,321.51, NSN has declined to make payment.

93.     As a direct, proximate, and foreseeable result of the aforesaid payment breach by NSN, TNS was required to retain the services of the undersigned legal counsel to prosecute this claim against NSN. Consequently, NSN is liable to TNS for its reasonable and necessary attorneys' fees incurred for the preparation and trial of this matter, plus additional sums in the event of an appeal, all as provided by Chapter 38 of the Texas Civil Practice and Remedies Code.

**WHEREFORE**, Plaintiff, Advanced Technologies and Installation Corporation d/b/a Telecom Network Specialists, demands Judgment in its favor against Defendant, Nokia Siemens Networks US, LLC, for $14,516,321.51 in compensatory damages or such greater or lesser sum as may be supported by the trial proofs, together with payment of interest, attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, costs of suit, and all such other relief that the Court deems just and proper.

## COUNT FIVE
### *(Quantum Meruit – Unjust Enrichment)*

94.     TNS incorporates herein by reference all of its prior allegations with the same force and effect as if fully set forth herein.

95.     In addition to and in the alternative to TNS' other claims in this action and without waiving or diminishing such other claims, TNS brings this claim in quantum meruit for its uncompensated TNS Services.

96.     The uncompensated TNS Services were knowingly and willingly accepted and approved by NSN.

19

97.    While TNS was performing such uncompensated TNS Services, NSN knew that TNS was doing so with the reasonable expectation that NSN would be paying TNS therefor and, during the course of such TNS performance, NSN did nothing to suggest that TNS was mistaken in its perception that it was entitled to such payment.

98.    NSN has financially benefited from such uncompensated TNS Services in that, among other things, such services allowed NSN to satisfy its contractual commitments to T-Mobile for which NSN was compensated.

99.    Under these circumstances, NSN has unfairly and inequitably accepted and retained the substantial benefit of such uncompensated TNS Services, while refusing to fairly compensate TNS therefor.

100.    The reasonable value of such uncompensated TNS Services is $14,516,321.51.

101.    NSN has not asserted and is not entitled to any credits or offsets with respect to such liability.

102.    As a direct, proximate, and foreseeable result of the foregoing, NSN has been, and continues to be, unjustly and unfairly enriched to the foreseeable financial detriment of TNS.

103.    Despite TNS' repeated and proper demands upon NSN for payment of this $14,516,321.51 obligation, NSN has failed to make payment.

104.    As a direct, proximate, and foreseeable result of the aforesaid payment breach by NSN, TNS was required to retain the services of the undersigned legal counsel to prosecute its claim against NSN. Consequently, NSN is liable to TNS for its

reasonable and necessary attorneys' fees incurred for the preparation of this claim, plus additional sums in the event of an appeal, all as provided by Chapter 38 of the Texas Civil Practice and Remedies Code.

**WHEREFORE**, Plaintiff, Advanced Technologies and Installation Corporation d/b/a Telecom Network Specialists, hereby demands Judgment in its favor against Defendant, Nokia Siemens Networks US, LLC, in for $14,516,321.51 in compensatory damages or such greater or lesser sums as the trial proofs may justify, together with the payment of interest, attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, costs of suit, and all such further and additional relief as the Court deems just and proper.

## COUNT SIX
### *(Breach of Contract – Implied in Fact)*

105.    TNS incorporates herein by reference all of its prior allegations with the same force and effect as if fully set forth herein.

106.    In addition to and in the alternative to TNS' other claims in this action, and without waiving or diminishing such other claims, TNS brings this claim in quantum meruit for the uncompensated TNS Services.

107.    The aforesaid representations, actions, and omissions of NSN have created an implied-in-fact contract or contracts with TNS pursuant to the terms of which TNS was entitled to be fully compensated for its uncompensated Out-of-Scope Services incurred on NSN's behalf.

108.    Pursuant to such implied-in-fact contract(s), TNS performed substantial Out-of-Scope Services for which NSN realized a substantial, economic benefit.

109.    The reasonable and agreed upon value of such uncompensated Out-of-

21

Scope Services is $11,327,283.80.

110.    NSN has not asserted and is not entitled to any credits or offsets with respect to such liability.

111.    Despite TNS' repeated and proper demands upon NSN for such compensation, NSN, in breach of such implied-in-fact contract(s), has improperly declined payment.

112.    As a direct, foreseeable, and proximate result of NSN's breach of its payment obligations under the parties' aforesaid implied-in-fact contract(s), TNS has been, and continues to be, damaged.

113.    As a direct, proximate, and foreseeable result of the aforesaid payment breach by NSN, TNS was required to retain the services of the undersigned legal counsel to prosecute its claim against NSN. Consequently, NSN is liable to TNS for its reasonable and necessary attorneys' fees incurred for the preparation of this claim, plus additional sums in the event of an appeal, all as provided by Chapter 38 of the Texas Civil Practice and Remedies Code.

**WHEREFORE,** Plaintiff, Advanced Technologies and Installation Corporation d/b/a Telecom Network Specialists, demands judgment against Defendant, Nokia Siemens Networks US, LLC, in Plaintiff's favor for $11,327,283.80 in compensatory damages or such greater or lesser amount as may be justified by the trial proofs, together with payment of interest, attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, costs of suit, and all such other and additional relief as the Court deems just and proper.

22

Case 3:09-cv-06233-FLW-TJB   Document 21-1   Filed 12/30/09   Page 34 of 56 PageID: ...

## COUNT SEVEN
### (Promissory Estoppel)

114.   TNS incorporates herein by reference all of its prior allegations with the same force and effect as if fully set forth herein.

115.   In addition to and in the alternative to TNS' other claims in this action, and without waiving or diminishing such other claims, TNS brings this claim for uncompensated Out-of-Scope Services.

116.   NSN, in order to induce TNS to perform uncompensated Out-of-Scope Services, as aforesaid, promised TNS that such work would be properly compensated.

117.   NSN should have reasonably expected that said promises would induce TNS to undertake and complete said uncompensated Out-of-Scope Services.

118.   TNS reasonably relied upon such promises by NSN in undertaking to perform, and completing, such uncompensated Out-of-Scope Services.

119.   Following TNS' performance of such uncompensated Out-of-Scope Services, NSN improperly breached its aforesaid promises of payment and improperly refused to compensate TNS.

120.   NSN's refusal to honor its aforesaid payment promises constitutes gross misconduct from which NSN, to the detriment of TNS, has realized an unfair and unwarranted financial benefit.

121.   In order to prevent gross injustice and promote fundamental fairness, NSN should be compelled to fairly compensate TNS for such uncompensated Out-of-Scope Services having a reasonable value of $11,327,283.80.

122.   NSN has not asserted and is not entitled to any credits or offsets with respect to such liability.

23

123.   Despite TNS' repeated and proper demands upon NSN for payment of this $11,327,283.80 obligation, NSN has failed to make payment.

124.   As a direct, proximate, and foreseeable result of the foregoing, TNS has been, and continues to be, damaged.

125.   As a direct, proximate, and foreseeable result of the aforesaid payment breach by NSN, TNS was required to retain the services of the undersigned legal counsel to prosecute its claims against NSN. Consequently, NSN is liable to TNS for its reasonable and necessary attorneys' fees incurred for the preparation of this claim, plus additional sums in the event of an appeal, all as provided by Chapter 38 of the Texas Civil Practice and Remedies Code.

**WHEREFORE**, Plaintiff, Advanced Technologies and Installation Corporation d/b/a Telecom Network Specialists, demands judgment against Defendant, Nokia Siemens Networks US, LLC, in Plaintiff's favor for $11,327,283.80 in compensatory damages or such greater or lesser amount as may be justified by the trial proofs, together with payment of interest, attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, costs of suit, and all such other relief that the Court deems just and proper.

### COUNT EIGHT
#### *(Negligent Misrepresentation)*

126.   TNS incorporates herein by reference each of its prior allegations with the same force and effects as if fully set forth herein.

127.   In addition to and in the alternative to TNS' other claims in this action, and without waiving or diminishing such other claims, TNS brings this claim for the uncompensated Out-of-Scope Services.

128.    NSN, by its aforesaid negligent misrepresentations foreseeably induced TNS to perform uncompensated Out-of-Scope Services.

129.    TNS reasonably and foreseeably relied upon such negligent misrepresentations by NSN in undertaking and completing its uncompensated Out-of-Scope Services having a reasonable and agreed upon value of $11,327,283.80.

130.    NSN has not asserted and is not entitled to any credits or offsets with respect to such liability.

131.    Despite TNS' repeated and proper demands upon NSN for payment of this $11,327,283.80 obligation, NSN has failed to make payment.

132.    As a direct, proximate, and foreseeable result of such negligent misrepresentations by NSN, TNS has been, and continues to be, damaged.

133.    As a direct, proximate, and foreseeable result of the aforesaid payment breach by NSN, TNS was required to retain the services of the undersigned legal counsel to prosecute its claims against NSN. Consequently, NSN is liable to TNS for its reasonable and necessary attorneys' fees incurred for the preparation of this claim, plus additional sums in the event of an appeal, all as provided by Chapter 38 of the Texas Civil Practice and Remedies Code.

**WHEREFORE**, Plaintiff, Advanced Technologies and Installation Corporation d/b/a Telecom Network Specialists, demands judgment against Defendant, Nokia Siemens Networks US, LLC, in Plaintiff's favor for $11,327,283.80 in compensatory damages or such greater or lesser amount as may be justified by the trial proofs, together with payment of interest, attorneys' fees pursuant to Chapter 38 of the Texas

25

Civil Practice and Remedies Code, costs of suit, and all such other relief that the Court deems just and proper.

## COUNT NINE
### (Equitable Fraud)

134.   TNS incorporates herein by reference all of its prior allegations with the same force and effect as if fully set forth herein.

135.   In addition to and in the alternative to TNS' other claims in this action, and without waiving or diminishing such other claims, TNS brings this claim in connection with the uncompensated Out-of-Scope Services.

136.   NSN, at various times, falsely assured TNS that it would be compensated for Out-of-Scope Services to be performed and that NSN would not insist upon strict compliance with any otherwise applicable procedural requirements.

137.   The aforesaid misrepresentations were made by NSN with the intention that TNS rely upon same.

138.   TNS did, in fact, reasonably rely upon such misrepresentations by NSN in undertaking to perform and complete its Out-of-Scope Services.

139.   As a direct, proximate, and foreseeable result of such misrepresentations, TNS has been, and continues to be, damaged.

140.   Despite TNS' repeated and proper demands for the promised extra compensation for its Out-of-Scope Services, NSN has declined to make payment.

141.   As a direct, proximate, and foreseeable result of the aforesaid payment breach by NSN, TNS was required to retain the services of the undersigned legal counsel to prosecute its claims against NSN. Consequently, NSN is liable to TNS for its reasonable and necessary attorneys' fees incurred for the preparation of this claim, plus

26

additional sums in the event of an appeal, all as provided by Chapter 38 of the Texas Civil Practice and Remedies Code.

**WHEREFORE**, Plaintiff, Advanced Technologies and Installation Corporation d/b/a Telecom Network Specialists, demands judgment against Defendant, Nokia Siemens Networks US, LLC, in Plaintiff's favor reforming the MSA, as supplemented and modified, so as to modify the claims-limitations provisions to the extent necessary to allow Plaintiff to fully recover the compensation to which Plaintiff was promised by Defendant, together with payment of interest, attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code, costs of suit, and all such other relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

## DESIGNATION OF TRIAL COUNSEL

The undersigned is hereby designated trial counsel in this matter.

**FLORIO PERRUCCI STEINHARDT
& FADER, LLC**

Attorneys for Plaintiff, Advanced
Technologies and Installation Corporation
d/b/a Telecom Network Specialists

By: _____
        JOHN F. NEARY

Dated:   October 23, 2009

27

## R. 4:5-1 CERTIFICATION

The undersigned hereby certifies that, to the best of his knowledge, information, and belief, the within matter in controversy is not the subject of any other court action or arbitration proceeding, now pending or contemplated, and that, as of this date, no other parties should be joined in this action.

**FLORIO PERRUCCI STEINHARDT & FADER, LLC**

Attorneys for Plaintiff, Advanced Technologies and Installation Corporation d/b/a Telecom Network Specialists

By: _____
JOHN F. NEARY

Dated: October 23, 2009

28

Case 3:09-cv-06233-FLW-TJB   Document 13-1-3   Filed 12/09/09   Page 1 of 2

# EXHIBIT B

## NATIONAL REGISTERED AGENTS, INC.

### SERVICE OF PROCESS SUMMARY TRANSMITTAL FORM

To: DAWN EXFORD (PL – LEGAL DEPARTMENT)
NOKIA SIEMENS NETWORKS US LLC
6000 CONNECTION DRIVE
BUILDING 4
IRVING, TX 75039

SOP Transmittal # NJ35435

(800) 767-1553 - Telephone
(609) 716-0820 - Fax

Entity Served: NOKIA SIEMENS NETWORKS US LLC

Enclosed herewith are legal documents received on behalf of the above captioned entity by National Registered Agents, Inc. or its Affiliate in the State of  NEW JERSEY  on this 10 day of  November  , 2009   The following is a summary of the document(s) received:

1.   Title of Action:  Advanced Technologies and Installation Corporation d/b/a Telecom Network Specialists vs. Nokia Siemens Networks US, LLC

2.   Document(s) served:  Summons/Citation/Third Party Summons, Complaint/Petition/Third Party Complaint, Demand for Jury Trial

3.   Court of Jurisdiction/   Superior Court of New Jersey, Law Division, Somerset County
     Case & Docket Number:  SOM-L-1940-09

4.   Amount Claimed, if any:  see document

5.   Method of Service (select one):
     X Personally served by:     X Process Server        ___ Deputy Sheriff        ___ U.S Marshall
     ___ Delivered Via:          ___ Certified Mail       ___ Regular Mail         ___ Facsimile
                                 (Envelope enclosed)      (Envelope enclosed)
     ___ Other (Explain):

6.   Date and Time of Receipt:  11/10/2009 4:07:30 PM EST (GMT -5)

7.   Appearance/Answer Date:  35 days

8.   Received From:            John F. Neary             9.  Federal Express Airbill #790194055099
     (Name, Address & Telephone Number)  Florio Perrucci Steinhardt & Fader, LLC
                                 218 Rt. 17 North, Suite 300      10.  Call Made to: DAWN EXFORD (PL – LEGAL
                                 Rochelle Park, NJ 07662               DEPARTMENT
                                 201-843-5858

11.  Special Comments:
     This SOP was digitally scanned and DAWN EXFORD (PL - LEGAL DEPARTMENT) was notified via email.

NATIONAL REGISTERED AGENTS, INC.              Copies To:

Transmitted by: Leslie Lofton

The information contained in this Summary Transmittal Form is provided by National Registered Agents, Inc. for informational purposes only and should not be considered a legal opinion. It is the responsibility of the parties receiving this form to review the legal documents forwarded and to take appropriate action.

ORIGINAL

# EXHIBIT C



Installation   Engineering   Program Management   IT Services   Corpo

## NEWS

*10 August 2004*

**Telecom Network Specialists and Samsung Telecommunications America Enter into Partnership**

Telecom Network Specialists, a division of Quanta Services, Inc. today announces that it has signed a dealer agreement with Samsung Telecommunications America to be an authorized agent selling their Voice Over Internet Protocol phone systems and formalizing a business partnership...more

## ABOUT TNS

Telecom Network Specialists was founded in 1978 with a focus on providing the highest quality services and resources to the telecommunications market. TNS Serves both wireline and wireless telecommunications OEM's and providers throughout the United States.

TNS is headquartered in the Telecom corridor in the greater Dallas Fort Worth Metroplex area in Richardson, Texas. TNS is proud to provide high quality, ISO/TL-9000 certified, services...more

## SUCCESS STORIES

"I wanted to drop you a quick note to thank you for your assistance with our recent AMR deployment. From the outset we expressed concern over schedule compression; we were being held to a very hard date for completion of all BSC's. There were several delays, both at the beginning and midway through the deployment and panic began to set in with every day we lost. We constantly had to reschedule activations and add BSC's to an already tight schedule, but each time your resources were asked to step up, they did so...more

Legal Info   Site Map   Contact Us   Employment

Copyright © 2000-2006 Telecom Network Specialists Inc



Installation  Engineering  Program Management  IT Services  Corpo

Home : Corporate Profile : About Us

Telecom Network Specialists was founded in 1978 with a focus on providing the highest quality services and resources to the telecommunications market. TNS Serves both wireline and wireless telecommunications OEM's and providers throughout the United States.

TNS is headquartered in the Telecom corridor in the greater Dallas Fort Worth Metroplex area in Richardson, Texas. TNS is proud to provide high quality, ISO/TL-9000 certified, services to the wireless, wireline and hi-tech telecommunications OEM's, carriers and providers.

Legal Info    Site Map    Contact Us    Employment
Copyright © 2000-2006 Telecom Network Specialists Inc.



Installation  Engineering  Program Management  IT Services  .Corp

Home : Corporate Profile : Company Overview : At A Glance

At A Glance
Long Term Objectives
Business Process
Organizational Structure
Rules of Engagement
Vision and Mission
Our Reach
Company Values
Focus and Strategy
Service Portfolio
Quality Program

**At A Glance**

➤ Leader in deployment of advanced telecom technologies in the United States

➤ Member of the Quanta Services Family- $1.75B dollar parent company

➤ Lead provider of End-to-End turnkey solutions for the telecommunications industry

➤ In business since 1975

➤ True Nationwide Presence

➤ TNS has the expertise and experience to support both OEM and Carrier solution needs

➤ TNS Fiscal year 2003 revenues of approximately USD $30 million

➤ Approximately 300 telecom service professionals

➤ Headquartered in the telecom corridor in Richardson, Texas

Copyright © 2000-2006 Telecom Network Specialists Inc.

# EXHIBIT D

**REED SMITH LLP**
*Formed in the State of Delaware*
**Mark S. Melodia, Esquire**
**Princeton Forrestal Village**
**136 Main Street, Suite 250**
**Princeton, New Jersey 08540**
**(609) 987-0050**
**Attorneys for Defendant**
**Nokia Siemens Networks US, LLC**

| | |
|---|---|
| ADVANCED TECHNOLOGIES AND INSTALLATION CORPORATION d/b/a TELECOM NETWORK SPECIALISTS, a Washington Corporation, | SUPERIOR COURT OF NEW JERSEY SOMERSET COUNTY, LAW DIVISION |
| Plaintiff, | DOCKET NO. L-1940-09 |
| | *Civil Action* |
| v. | **NOTICE OF FILING OF NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT** |
| NOKIA SIEMENS NETWORKS US, LLC, a Delaware Limited Liability Company, | |
| Defendants. | |

**TO:** Clerk of the Superior Court of New Jersey
Hughes Justice Complex
25 West Market Street
P.O. Box 971
Trenton, New Jersey 08625

Clerk of the Superior Court of New Jersey, Somerset County
Clerk's Office
20 North Bridge Street
Somerville, New Jersey 08876

John F. Neary, Esquire
Florio, Perrucci Steinhardt & Fader, LLC
218 Route 17 North, Suite 300
Rochelle Park, New Jersey 07662
*Attorneys for Plaintiff*

**PLEASE TAKE NOTICE** that on this 10th day of December, 2009, Nokia Siemens Networks US, LLC ("NSN"), a Defendant named in the above-captioned action, filed a Notice of Removal of this action from the Superior Court of New Jersey, Law Division, Somerset County, New Jersey to the United States District Court for the District of New Jersey with the District Court.  A true and correct copy of that filing is attached hereto as **Exhibit A.**

Pursuant to 28 U.S.C. §1446(d), the Superior Court, Law Division, shall proceed no further unless and until this action is remanded.

> **REED SMITH LLP**
> Attorneys for Defendant
> Nokia Siemens Networks US, LLC
>
> By: _____
> Mark S. Melodia

**REED SMITH LLP**
*Formed in the State of Delaware*
**Mark S. Melodia, Esquire**
**Princeton Forrestal Village**
**136 Main Street, Suite 250**
**Princeton, New Jersey 08540**
**(609) 987-0050**
**Attorneys for Defendant**
**Nokia Siemens Networks US, LLC**

| | |
|---|---|
| ADVANCED TECHNOLOGIES AND INSTALLATION CORPORATION d/b/a TELECOM NETWORK SPECIALISTS, a Washington Corporation, | SUPERIOR COURT OF NEW JERSEY SOMERSET COUNTY, LAW DIVISION |
| Plaintiff, | DOCKET NO. L-1940-09 |
| | *Civil Action* |
| v. | **CERTIFICATION OF SERVICE** |
| NOKIA SIEMENS NETWORKS US, LLC, a Delaware Limited Liability Company, | |
| Defendants. | |

I hereby certify that on December 10, 2009, an original and two copies of the foregoing Notice of Filing of Notice of Removal was filed with the Clerk of the Superior Court of New Jersey, Hughes Justice Complex, 25 West Market Street, P.O. Box 971, Trenton, New Jersey 08625 via overnight delivery. A courtesy copy of the Notice of Filing of Notice of Removal was also sent to Clerk of the Superior Court of New Jersey, Somerset County, Civil Records Office, 20 North Bridge Street, Somerville, New Jersey 08876.

A copy of the Notice of Filing of Notice of Removal was also served via overnight delivery upon the following:

John F. Neary, Esquire
Florio, Perrucci Steinhardt & Fader, LLC
218 Route 17 North, Suite 300
Rochelle Park, New Jersey 07662
*Attorneys for Plaintiff*

I certify that the foregoing statements made by me are true.  I am aware that if any of the

foregoing statements made by me are willfully false, I am subject to punishment.

Mark S. Melodia

Dated: December 10, 2009

- 4 -

**REED SMITH LLP**
*Formed in the State of Delaware*
Mark S. Melodia, Esquire
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, N.J. 08540
Tel. (609) 987-0050
Attorneys for Defendant,
Nokia Siemens Networks US, LLC

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## (TRENTON VICINAGE)

| | |
|---|---|
| **ADVANCED TECHNOLOGIES AND INSTALLATION CORPORATION d/b/a TELECOM NETWORK SPECIALISTS,**<br><br>    **Plaintiff,**<br><br>  **v.**<br><br>**NOKIA SIEMENS NETWORKS US, LLC,**<br><br>    **Defendant.** | **DOCUMENT ELECTRONICALLY FILED**<br><br>**CIVIL ACTION NO. _____**<br><br><br>**CERTIFICATION OF SERVICE** |

I hereby certify that, on December 10, 2009, I caused a copy of Defendant's Notice of Removal (and all corresponding pleadings, including the Certification of Mark S. Melodia, Esquire in support thereof) to be served *via* the Court's ECF system upon counsel of record for Plaintiff Advanced Technologies and Installation Corporation d/b/a Telecom Network Specialists, addressed as follows:

> John F. Neary, Esquire
> Florio Perrucci Steinhardt & Fader, L.L.C.
> 218 Route 17 North, Suite 300
> Rochelle Park, New Jersey 07662
> *Attorneys for Plaintiff*

      By: <u>s/Mark S. Melodia    </u>
          Mark S. Melodia